# United States Court of Appeals
## For the First Circuit

No. 09-1847

DAVID EDUARDO CASTAÑEDA-CASTILLO;
CARMEN JULIA DE LA CRUZ-CASTAÑEDA;
PIERA DINA CASTAÑEDA,

Petitioners,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

Before

Torruella, Ripple,[*] and Lipez,
<u>Circuit Judges</u>.

**OPINION AND ORDER**

Entered:  April 12, 2012

Before this court is a motion for final judgment filed by Petitioners David Eduardo Castañeda-Castillo ("Castañeda"), his wife, and his daughter.  We grant this motion over the government's objection.  With this judgment, this court brings to an end a case that has been pending for over <u>eighteen years</u>.

---

*  Of the Seventh Circuit, sitting by designation.

The full history of this case can be found in the three prior opinions of this court and one opinion of the United States District Court for the District of Massachusetts. See Castañeda-Castillo v. Gonzáles, 464 F.3d 112 (1st Cir. 2006) ("Castañeda I"); Castañeda-Castillo v. Gonzáles, 488 F.3d 17 (1st Cir. 2007) (en banc) ("Castañeda II"); United States v. Castañeda-Castillo, 739 F. Supp. 2d 49 (D. Mass. 2010); Castañeda-Castillo v. Holder, 638 F.3d 354 (1st Cir. 2011) ("Castañeda IV"). We recount the highlights here. Castañeda is a former Peruvian military officer who was accused of being part of a massacre in the village of Accomarca (the "Accomarca massacre") in 1985, during Peru's conflict with the Shining Path guerrilla movement. Castañeda IV, 638 F.3d at 357. The Peruvian Senate Human Rights Commission investigated the incident and found that, although Castañeda commanded a unit in a larger force that was responsible for the massacre, his unit was not involved. Id. Castañeda was later tried before a Peruvian military court martial. Id. The court martial acquitted Castañeda, and this decision was affirmed by the Supreme Council of Military Justice, the court with the highest jurisdiction over military justice matters in Peru. See Castañeda III, 739 F. Supp. 2d at 52. Nevertheless, Castañeda's name became associated with the massacre, and he and his family began receiving death threats from Shining Path. Castañeda IV, 638 F.3d at 357-58.

Over the next several years, Shining Path -- a violent Maoist insurgent group that "is among the world's most ruthless guerrilla organizations," Castañeda I, 464 F.3d at 114 n.3 -- repeatedly attacked Castañeda and his family, in the process killing a number of innocent bystanders. Castañeda IV, 638 F.3d at 58. Castañeda and his family eventually fled to the United States in 1991. Id. In 1993, Castañeda filed for asylum, naming his wife and daughter as derivative applicants. Id. An Immigration Judge ("IJ") denied the application in 2004, and the Board of Immigration Appeals ("BIA") affirmed in 2005. Over the next five years, while his appeals were pending, Castañeda sat in jail in custody of the Department of Homeland Security ("DHS"); he was finally released on bail in August 2010. Id.

In our first decision, we reversed the BIA's finding that Castañeda had engaged in persecution, holding that it was not supported by substantial evidence. Castañeda I, 464 F.3d at 121-26. DHS then requested rehearing en banc, which we granted. In Castañeda II, the en banc court held that the so-called "persecutor bar" requires that an asylum seeker have prior or contemporaneous knowledge that the effect of his actions is to assist in persecution. See 488 F.3d at 21-22. In light of this holding, we remanded the case to the BIA to consider whether Castañeda was credible in his testimony that he did not know of the Accomarca massacre until after it had occurred. Id. at 24-25.

-3-

Upon remand, the IJ again denied the application, holding that: (1) Castañeda had not met his burden of proving that he was not a persecutor; (2) he had not demonstrated that he was persecuted on account of his membership in a particular social group or for a political opinion; and (3) he did not have an objectively reasonable fear of future persecution. Castañeda IV, 638 F.3d at 359. In May 2009, the BIA reversed the IJ as to point (1), concluding that the persecutor bar did not apply, but upheld the IJ's decision that Castañeda was materially ineligible for asylum on grounds (2) and (3). Id. at 359. The thrust of the BIA's argument was that Shining Path attacked Castañeda not because he was a member of a specific group -- military officers who were linked to the Accomarca massacre -- but rather out of "revenge" for the massacre. Id. at 362-63.

Castañeda again petitioned this court for review in June 2009. We granted a stay of removal in July 2009 pending resolution of the petition. For reasons that were never made clear, the government did not file the complete administrative record in the case until November 2009. In March 2010 -- roughly seventeen years after Castañeda's initial application had been filed, and after Castañeda had spent over four years in jail -- the government asked us to remand the case to the BIA yet again. The government sought remand because it had recently decided to commence extradition proceedings against Castañeda in response to a request by the

-4-

Peruvian government in 2008. Id. at 359.[1] The government also requested a remand to the BIA for further consideration in light of Sompotan v. Mukasey, 533 F.3d 63 (1st Cir. 2008), despite the fact that Sompotan simply re-stated well-settled law and pre-dated the BIA's most recent decision in this case. We denied the government's request for a remand and proceeded to consider the merits of Castañeda's asylum claim -- a topic the government did not address in its briefing to this court. Castañeda IV, 638 F.3d at 362.

In Castañeda IV, we remanded the case to the BIA with instructions to consider whether military officers linked to the massacre comprised a social group upon which an asylum claim could be based. Id. at 363. In addition, in light of the "unusually prolonged and convoluted history of this case," we took the extraordinary step of retaining jurisdiction over the case while the BIA addressed the issues on remand. Id.

Castañeda's long ordeal now appears, finally, to be ending. On October 11, 2011, the BIA held that military officers associated with the Accomarca massacre constituted a cognizable social group and that Castañeda suffered past persecution for his membership in that group. The BIA remanded to the IJ to consider

---

[1]  As the district court noted in its 2010 decision granting Castañeda's release on bond, there was no explanation for the almost two-year delay between Peru's extradition request and the U.S. government's commencement of extradition proceedings. See Castañeda III, 739 F. Supp. 2d at 58.

whether the government could rebut the presumption that Castañeda had a well-founded fear of persecution if he returned to Peru. On February 6, 2012, the IJ granted asylum to Castañeda and his family. The government has not appealed this decision, and it is now administratively final.

However, the government presents us with one more wrinkle: it claims that we lack the authority to issue a final judgment. We reject this argument. When we remanded this case to the BIA in Castañeda IV, we explicitly retained jurisdiction for the express purpose of ensuring a speedy resolution to this case. 638 F.3d at 363-64. The appropriate course for this court, therefore, is to issue a final judgment closing the case.

Given that all factual and legal issues relating to Petitioners' eligibility for asylum have now been resolved in their favor by the administrative agency, the petition for review over which we retained jurisdiction in Castañeda IV is hereby dismissed as moot, and the Clerk of Court is directed to issue final judgment. In reaching this disposition, we take no position on the deadline for filing, or potential merit of, an application for attorneys' fees under the Equal Access to Justice Act.

It is so ordered.

cc: Ms. Bing, Mr. Crapo, Ms. Ferrier, Mr. Joyce, Mr. Latour and Ms. Moresi.